United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Wilshire Insurance Company, Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 15-21644-Civ-Scola ) |
| Casablanca on the Bay, Inc. and others, Defendants. | ) ) ) |

### **Omnibus Order Denying Casa Market and Casa Grill's Motions**

The jury in this case returned a verdict in favor of third-party plaintiff Julia Padron on her claim against third-party defendants Casablanca Seafood Bar & Grill, Inc. ("Casa Grill") and Casablanca Fish Market, Inc. ("Casa Market") finding them both vicariously liable for a car accident involving Lazaro E. Sanchez. Casa Market and Casa Grill now attack that verdict under Federal Rule of Civil Procedure 50 and, alternatively, Rule 59. Both arguments fail and Casa Market and Casa Grill's Rule 50 and 59 motions (**ECF No. 156**) are **denied**. Additionally, Casa Market and Casa Grill have also asked the Court to "dismiss and remand" Padron's remaining claims (ECF No. 170) and requested leave to file an amended answer (ECF No. 169). Both of these motions (**ECF Nos. 169 & 170**) are **denied** as well.

1. **Background**

To recap, on December 23, 2013, a truck driven by Lazaro E. Sanchez and a car driven by Padron collided. After Padron filed suit in state court against Lazaro E.'s[1] employer, Defendant Casablanca on the Bay, Inc. ("Casa Bay"), Plaintiff Wilshire Insurance Company filed a declaratory action in this Court against Casa Bay and Padron. Wilshire sought a declaration of "no coverage" under a commercial general-liability insurance policy it issued to Casa Bay for the relief sought by Padron in state court. In response, Padron filed a counterclaim against Wilshire, a cross claim against Casa Bay, and third-party claims against Casa Market and Casa Grill, two entities affiliated with Casa Bay and all owned by members of the Sanchez family. In count one

---

[1] There are multiple Sanchezes in this case and therefore those family members will be referred to by their first names. Additionally, there are multiple Lazaro Sanchezes: Lazaro E. Sanchez, the driver of the truck, Lazaro Sanchez, Jr., the driver's father and an owner of the various Casablanca entities involved in this action, and Lazaro Sanchez, Sr., Lazaro Jr.'s father.

of her complaint, Padron seeks a declaration from the Court that: Lazaro E. "was in the course of employment with one or more" of the Casablanca entities; and Wilshire owes a duty of indemnification to one or more of the Casablanca entities for the damages Padron sustained in the accident. (Padron's Counterclaim, ECF No. 9, 7.) In counts two and three, Padron seeks damages from all three Casablanca entities for the injuries she sustained as a result of the accident. (*Id.* at 8–9.)

For various reasons, the Court bifurcated the trial in this matter. Just before the trial was set to commence, Wilshire, Casa Bay, and Padron reached a settlement. This left only Padron's allegations of vicarious liability against Casa Market and Casa Grill to be determined at the then upcoming trial. After a two-day trial, the jury found both entities vicariously liable for Sanchez's involvement in the collision. The jury found Casa Market vicariously liable because Lazaro E. was acting within the scope of his employment and found Casa Grill liable because he was acting within the scope of his agency.

After the parties had rested, and prior to closing arguments, Casa Market moved, ore tenus, for a judgment as a matter of law under Federal Rule of Civil Procedure 50(a). Casa Grill joined Casa Market's motion, echoing Casa Market's arguments: Padron had failed to adduce evidence sufficient to support a finding that Lazaro E. was acting within the scope of his employment when his truck collided with Padron's car. The Court denied the parties' motions, finding substantial evidence had been presented to support a finding of vicarious liability under either an employment or an agency theory. Casa Grill and Casa Market now ask the Court to, among other things, enter judgment as a matter of law, or, in the alternative, for a new trial. For the reasons that follow, the Court denies both requests.

**2. The Court denies Casa Market and Casa Grill's motion for judgment as a matter of law.**

**A. Legal Standard**

"A district court should grant judgment as a matter of law when the plaintiff presents no legally sufficient evidentiary basis for a reasonable jury to find for him on a material element of his cause of action." *Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005); Fed. R. Civ. P. 50(a) (a court may grant a motion for judgment as a matter of law on an issue if "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party on that issue."). Although courts should "look at the evidence in the light most favorable to the non-moving party, the non-movant must put forth more than a mere scintilla of evidence suggesting

that reasonable minds could reach differing verdicts." *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000). A Rule 50 motion should be denied "if the plaintiff presents enough evidence to create a substantial conflict in the evidence on an essential element of the plaintiff's case." *Pickett*, 420 F.3d at 1278. The "standard for judgment as a matter of law . . . mirrors the standard for summary judgment under Rule 56. Thus, the court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 135 (2000) (citations omitted). "The court must affirm the jury verdict unless there is no legal basis upon which the jury could have found for the plaintiff." *Peer v. Lewis*, No. 06-60146-CIV, 2008 WL 2047978, at *3 (S.D. Fla. May 13, 2008) (Torres, J.), *aff'd*, No. 08-13465, 2009 WL 323104 (11th Cir. Feb. 10, 2009) (alterations adopted) (quoting *Telecom Tech. Servs., Inc. v. Rolm Co.*, 388 F.3d 820, 830 (11th Cir.2004)); *see also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir.1997) ("A mere scintilla of evidence is not sufficient to support a jury verdict.").

### B. Discussion

In their motion, Casa Grill and Casa Market submit that Padron did not present any evidence showing that Lazaro E. was acting within the scope of his employment or agency with either company. Instead, according to Casa Market and Casa Grill, all that Padron was able to establish was, at most, that Lazaro E. "was in the process of doing something for Casablanca on the Bay, Inc.," a separate company. (Def.'s Mot. at 5.) However, there was evidence adduced at trial that could readily support the jury's findings that, at the time of the accident, Lazaro E. was both: (1) acting in the course of his employment with Casa Market; and (2) acting within the course of his agency with Casa Grill.

As provided in the jury instructions:

> An *employee* acts within the scope of his *employment* only if the following three elements are proven by a preponderance of the evidence:
>
> 1.) At the time of the accident, the employee was performing the kind of activity he was employed to perform;
> 2.) The activity was being performed substantially within the time and space limits of the employee's employment; and
> 3.) The performance of the activity was motivated, at least in part, to further the employer's interests; and

> An *agent* acts within the scope of his *agency* for one or more of the defendant companies only if the following three elements are proven by a preponderance of the evidence:
>
> 1.) At the time of the accident, the agent was performing the kind of activity he was directed to perform;
> 2.) The activity was being performed substantially within the time and space limits of the his agency; and
> 3.) The performance of the activity was motivated, at least in part, to further the defendant company's interests.

(Jury Instr., ECF No. 154, 3–6 (emphasis added).)

Casa Market and Casa Grill complain that Padron failed to set forth any evidence that Lazaro E. was acting within either the scope of his employment with Casa Market or within the scope of his agency with Casa Grill. To that end, Casa Market and Casa Grill insist that, first, just before the accident Lazaro E. was, if anything, performing work for Casa Bay alone and not either Casa Market or Casa Grill. And, second, in any event, at the time of the accident itself, Lazaro E. had deviated from his Casa Bay work and was actually running a purely personal errand that had nothing to do with any of the three companies. The Court disagrees, finding evidence from which the jury could have found that Lazaro E. was both acting within the scope of his employment with Casa Market and within the scope of his agency with Casa Grill.

As a starting point, neither Casa Market nor Casa Grill quarrels with the jury's finding that, around the time of the accident, Lazaro E. was (1) an employee of both Casa Market and Grill and (2) an agent of Casa Grill. Thus the only issues now under consideration are whether the evidence was sufficient for the jury to find that Lazaro E. was acting within the scope of his employment and agency with Casa Market and Grill, respectively.

Regarding the events preceding the car accident, the evidence presented at trial established that Lazaro E. had, at some point, been asked to drive his grandfather home from one of the Casablanca entities. According to Lazaro Jr. (Lazaro E.'s father), Maribel Sanchez (Lazaro Jr.'s wife and Lazaro E.'s mother as well as boss), also told Lazaro E. to buy a new television to replace a broken one at Casa Bay. After dropping off his grandfather, Lazaro E. then went to a nearby Best Buy, on Bird Road in Miami, to purchase the television. Since that store did not have the particular television he wanted in stock, someone from the store directed Lazaro E. to a Best Buy in Miami Beach. As he was leaving the Best Buy on Bird Road, however, Maribel called Lazaro E. and told him to go pick up his cousins from school. According to Lazaro E.'s trial testimony, it

was while he was on his way from the Best Buy to his cousins' school that he was involved in the collision with Padron.

Casa Market and Casa Grill insist that the trial witnesses universally testified that Lazaro E. was running a purely personal errand for himself, and not for any of the companies, at the time of the accident. The Court disagrees with this characterization of the evidence.

First of all, it was undisputed that Lazaro E. was on the clock when Maribel told him to go pick up his cousins: the parties stipulated that Lazaro E. had clocked in at 8:00 a.m. and had been clocked out at 4:00 p.m. on the day of the accident. The accident occurred around 2:30 p.m. Furthermore, Yasmin Fleitas, the human resources manager for all three Casa entities (and one of Lazaro E.'s aunts), testified that she considered Lazaro E. to have been working at the time of the accident. That Lazaro E. was working, and not running a personal errand, at the time of the accident is further buttressed by the fact that he was ultimately paid for working those hours on the day of the accident. Indeed, Fleitas testified that despite being well aware of the accident, she reviewed and approved Lazaro E.'s timecard for that day. She also testified that she was generally unaware of any time for which Lazaro E. was ever paid but wasn't actually working.

Second, it was well established at trial that Maribel, in addition to being Lazaro E.'s mother, was also one of the people that regulated his work activities, including errands, for all three Casa companies. While Loretta Sanchez (Lazaro E.'s aunt and Lazaro Jr.'s sister) testified that she had intended for Lazaro E. to pick up her children, there is no dispute that she called Maribel, and not Lazaro E. directly. Loretta also testified that that she always calls Maribel for everything. Thus despite Loretta's testimony that she believed Lazaro E. was picking up his cousins as a personal favor to her, as her nephew, the jury could have inferred from her testimony that she had asked Maribel for the help directly rather than as a mere conduit to Lazaro E. Further, Loretta testified that Maribel told her, in no uncertain terms, that she would make sure that Lazaro E. picked up the children. That is, Maribel did not tell Loretta that she would, for example, call Lazaro E. on Loretta's behalf, to relay the request to see if he could take the time to pick up his cousins. To the contrary, not a single witness testified that Lazaro E. was given an option. Rather, the evidence showed that Maribel called Lazaro E. and *told* him to pick up his cousins. Lazaro E. himself even acknowledged that his general duties for the Casa companies included doing, without exception, whatever his parents told him to do, even if it was a personal errand for one of them. Lazaro Jr. testified that Maribel relied on Lazaro E. to run personal errands so that she

could concentrate on the business of the three Casa entities. The jury could have reasonably disregarded the self-serving testimony offered by the various owners and employees of the Casa companies that Lazaro E. was on a purely personal mission that did not in any way benefit the companies. Instead, there was evidence presented that Maribel often asked Lazaro E. to run personal errands for her and that his doing so ultimately benefitted the businesses, allowing Maribel to focus on more important things in the companies. It would be reasonable for the jury to infer that Maribel's directive to Lazaro E. regarding Loretta's children was an errand that was in fact personal to Maribel and not Lazaro E. and, further, that she asked Lazaro E. to run the errand as his boss rather than as his mother.

Next there was ample evidence that the three Casa entities operated as one cohesive family business. Loretta, for one, testified that the three companies are indeed all one unified business. The parties stipulated that Lazaro E. was paid for his services to all three companies through paychecks from Casa Market. Maribel testified that all three companies jointly collaborated in marketing efforts. And, most importantly, Maribel herself, at the time of the accident, was working for, if not managing, all three Casa entities. She was also a corporate officer for Casa Grill and Casa Market but not Casa Bay. Thus, any errand that Maribel directed Lazaro to do, whether it was personal to her (i.e. picking up the cousins) or whether it was for only Casa Bay (i.e., buying the television), indirectly benefitted all three companies. For, if Maribel could delegate a more menial task to Lazaro E. that involved either a personal matter or another entity, that would free up her time to focus on more important things involving the entire family business, including both Casa Grill and Casa Market.

In sum, the Court finds a legally sufficient basis upon which the jury could have found that at the time of the accident: (1) Lazaro E. was performing the kind of activity he was employed by Casa Market to perform and the kind of activity he was directed to perform by Casa Grill; (2) that he was performing that activity within the time and space limits of his employment with Casa Market and of his agency with Casa Grill; and (3) that his performance of the activity was motivated, at least in part, to further both Casa Market and Casa Grill's interests. Casa Grill and Casa Market's focus on their argument that Lazaro E.'s timesheet alone is insufficient to establish that he was acting within the scope of his employment or agency is misplaced. Lazaro E.'s timesheet was but one fact, albeit a significant fact, that supported the jury's verdict. It was by no means the only fact. Padron certainly presented enough evidence to

create a substantial conflict in the evidence on all of the essential elements of her case. *See Pickett*, 420 F.3d. at 1278.

### 3. The Court denies Casa Market and Casa Grill's motion for a new trial.

#### A. Legal Standard

In accordance with Rule 59(a), a court may grant a motion for a new trial on all or some issues, "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Eleventh Circuit, however, "permits a district court to order a new trial only under extremely narrow circumstances." *Gonzalez v. Batmasian*, No. 9:16-CV-81696, 2017 WL 3055009, at *1 (S.D. Fla. July 19, 2017) (Middlebrooks, J.). That is, "[i]t may do so when 'the verdict is against the clear weight of the evidence or will result in a miscarriage of justice.'" *Id.* (citing *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554, 1556 (11th Cir. 1984)). Under Rule 59, the standard is more flexible than the standard under Rule 50 and the court is free to independently weigh the evidence itself. *Williams v. City of Valdosta*, 689 F.2d 964, 973 (11th Cir. 1982). However, in order to find in the movant's favor, the Court "must find the verdict contrary to the great, and not merely the greater, weight of the evidence." *Id.* "[W]hen independently weighing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well." *Id.*

#### B. Discussion

Upon a review of the evidence, the Court finds no occasion to disturb the jury's verdict: the jury's verdict is not contrary to the great weight of the evidence. Although, as Casa Grill and Casa Market point out, all five of Padron's witnesses "testified that Lazaro E. Sanchez was doing a personal errand for his aunt at the time of the accident" (Defs.' Mot. at 9), the Court does not find such conclusory and self-serving testimony compelling. This is especially so in light of other testimony offered by some of these witnesses that contradicted the allegation that the errand was purely personal to Lazaro E. Similarly, the Court is not persuaded by the testimony from the five witnesses that picking up his cousins was not the kind of activity that Lazaro E. was employed or directed to perform. Many of these same five witnesses also testified that Lazaro Jr. and Maribel often directed Lazaro E. to run personal errands for them as part of his employment in the family business. The Court does not find credible the various witnesses' self-serving testimony that carved out this particular errand from all of the other errands that Lazaro E. was

asked to run while working for the Casa entities. Lastly, Casa Grill and Casa Market's contention that purchasing the television benefitted only Casa Bay is unavailing. Maribel asked Lazaro E. to purchase the television. Maribel in turn was a manager of all three businesses. Thus, any errand that she did not have to run herself, regardless of which company that specific errand was for, necessarily benefitted the entire family business. In the end, although there was certainly plenty of evidence in Casa Grill and Casa Market's favor, the Court finds that it cannot say that the jury's verdict is against the clear weight of the evidence.

Casa Grill and Casa Market further argue that the Court confused the jury in answering the jury's questions, submitted to the Court during deliberations: "What is the legal definition of a company? Is the definition open to interpretation?" (Jury Note/Question, ECF No. 150, 1.) The Court answered: "The use of 'company' or 'companies' in the jury instructions refers to Casablanca Fish Market and/or Casablanca Seafood Bar & Grill, Inc. and there is no dispute that each of those entities is a 'company' as that term is used." (Court's Resp., ECF No. 150, 2.) Casa Grill and Casa Market submit that this "confused the jury by improperly blending the Defendants into one entity." (Defs.' Mot. at 10.) To begin with, the Court finds this unlikely as the jury clearly treated Casa Market and Casa Grill differently: the jury found that Lazaro E. was acting within the scope of his employment with Casa Market but only within the scope of his *agency* as to Casa Grill. This alone shows that Casa Grill and Casa Market's concerns are not well founded. Without more, their conclusory arguments that the Court's answer was confusing fails to persuade.

Additionally, after reading its proposed answer to the jury's question to the parties, the Court asked all the attorneys if they had any objections. They universally and unequivocally all said no. Casa Grill and Casa Market therefore appear to have, in any event, waived their rights to now challenge the Court's response. *C.f. United States v. Fulford*, 267 F.3d 1241, 1247 (11th Cir. 2001) (finding, in an appellate context, that a party had waived the right to contest a jury instruction after finding it acceptable at trial).

### 4. The Court denies Casa Market and Casa Grill's motion to dismiss.[2]

Casa Grill and Casa Market's argument for dismissal is twofold. First, they contend that because Wilshire settled its claims with Casa Bay and

---

[2] Casa Market and Casa Grill also ask the Court to remand the remaining state claims. This case, however, is an original action and not before the Court on removal. There is thus nowhere to remand this case to.

Padron, the Court no longer has jurisdiction over Padron's remaining claims against Casa Market and Casa Grill. Second, they argue, even if the Court has supplemental jurisdiction over Padron's state-law claims, the Court should use its discretion to decline to exercise such jurisdiction. Both arguments fail.

To begin with, Wilshire initiated this case under 28 U.S.C. § 2201, seeking declaratory relief. The Court's jurisdiction was based on diversity, in accordance with 28 U.S.C. § 1332, as Wilshire, a North Carolina citizen, was diverse from defendants Padron and Casa Bay, both Florida citizens. According to Casa Market and Casa Grill, 28 U.S.C. § 1367 provides that a federal court exercising diversity jurisdiction does not have supplemental jurisdiction over any third-party defendants who are non-diverse from their respective third-party claimant. Padron and Casa Market and Casa Grill are all Florida citizens. So, Casa Market and Casa Grill reason, the Court does not have jurisdiction over Padron's third-party claims against third-party defendants Casa Market and Casa Grill. But Casa Market and Casa Grill either misconstrue or purposely misstate the relevant supplemental jurisdiction provision. That provision addresses only claims by *plaintiffs*, here Wilshire, against, among others, third-party defendants who are nondiverse to the *plaintiff*. It says nothing about requiring diversity between a third-party plaintiff and a third-party defendant.

Next, Casa Market and Casa Grill urge the Court to decline to exercise supplemental jurisdiction over Padron's claims because the Court has dismissed all the claims over which it had original jurisdiction. Ordinarily this Court often remands or dismisses remaining state-law claims when it has dismissed all the federal claims in a case over which it had original jurisdiction. But that is almost universally "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain." *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 745 (11th Cir. 2006) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). Here, the claims based on diversity did not drop out of the lawsuit in its "early stages." Instead, three days before the trial was set to commence, Wilshire, Casa Bay, and Padron notified the Court that they had settled the claims amongst themselves, leaving only Padron's third-party claims against Casa Market and Casa Grill. (Not. of Partial Settlement, ECF No. 147.) And then it was not until almost a month after the jury had reached a verdict on the vicarious-liability issue that Wilshire, Padron, and Casa Bay filed the joint stipulation of dismissal of their claims. (Jt. Stip., ECF No. 157.) Further, in carefully considering the balance among such factors as judicial economy, convenience, fairness, and comity, the Court finds dismissal at this stage of the litigation unwarranted.

## 5. The Court denies Casa Market and Casa Grill's motion for leave to amend.

Casa Market and Casa Grill filed their answer and affirmative defenses to Padron's third-party complaint on August 7, 2015. (ECF No. 19.) The Court thereafter set October 20, 2015 as the deadline for the parties to amend their pleadings. (ECF No. 23.) Now, close to two years after that deadline has expired, Casa Market and Casa Grill seek to amend their answer and affirmative defenses to specify two *Fabre* defendants.

In support of the amendment, Casa Market and Casa Grill point to Federal Rule of Civil Procedure 15(a)(2) which provides "[t]he court should freely give leave" to amend "when justice so requires." At the same time, they also acknowledge that, under Rule 16(b), a movant must also show "good cause" if amendment is sought after the deadline to do so has passed. *See Sosa v. Air Print Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998); Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). The standard set forth in Rule 16(b) "precludes modification [of the scheduling order] unless the schedule cannot 'be met despite the diligence of the party seeking the extension.'" *See Sosa*, 133 F.3d at 1418. Thus, "diligence is the key to satisfying the good cause requirement." *De Varona v. Discount Auto Parts, LLC*, 285 F.R.D. 671, 672–73 (S.D. Fla. 2012) (Ungaro, J.). Only if "good cause" for an untimely amendment is shown under Rule 16(b), does Rule 15(a)'s instruction, that leave should be freely given when justice so requires, come into play. See Fed. R. Civ. P. 15(a)(2). While this standard is lenient, still, "a motion to amend may be denied on numerous grounds such as undue delay, undue prejudice to the [opposing party], and futility of the amendment." See *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1287 (11th Cir. 2003) (citations omitted).

Casa Market and Casa Grill have not established the diligence required to support a finding of good cause. Instead Casa Market and Casa Grill only provide the Court with conclusory allegations that they "were unable to obtain the identity of *Fabre* defendants until after the October 20, 2015 deadline." (Defs.' Mot. for Leave to Amend, ECF No. 169, 5.) They then explain that they were only able to discover the information needed for the amendment during the depositions of Padron on April 19, 2016 and of an accident eyewitness on July 8, 2016. Casa Market and Casa Grill do not explain why this is so nor do they explain why they waited over a year since purportedly receiving the information to even seek leave to amend. In short, Casa Market and Casa Grill have not carried their burden that, despite their diligence, they were unable to attain the discovered information sooner. *See Southern Grouts & Mortars, Inc.* v.

*3M Co.*, 575 F.3d 1235, 1241, n. 3 (11th Cir. 2009) (lack of diligence finding triggered by "a [party's] failure to seek the information it needs to determine whether an amendment is in order").

6. **Conclusion**

For the reasons set forth above, the Court **denies** Casa Market and Casa Grill's: motion for a judgment as a matter of law as well as their motion, in the alternative, for a new trial (**ECF No. 156**); motion to dismiss and remand (**ECF No. 170**); and motion for leave amend (**ECF No. 169**).

**Done and ordered** at Miami, Florida on August 14, 2017.

Robert N. Scola, Jr.
United States District Judge